*432 KISTLER, J.,
concurring.
During a traffic stop, an officer asked defendant if he had a weapon. The majority holds that the officer’s question was not reasonably related to the stop and, as a result, violated Article I, section 9, of the Oregon Constitution. I concur in the majority’s opinion but write separately for two reasons. First, whether the officer’s question was reasonably related to the stop matters in this case because, if it were not, then asking the question extended the stop in violation of the Article I, section 9. See State v. Rodgers/Kirkeby, 347 Or 610, 227 P3d 695 (2010) (considering a similar issue). Second, the problem in this case is not that the evidence was insufficient to justify the officer’s question. Rather, the problem, as I understand the majority opinion, is that the officer testified that he asks the same question for officer-safety reasons in every pedestrian stop without regard to the circumstances of stop, and he did not explain why the circumstances of this stop caused him to be concerned for his or anyone else’s safety. With that understanding, I concur in the majority’s opinion.
Throughout this litigation, defendant has argued that the officer’s question unconstitutionally extended the stop. The state, for its part, does not dispute that, as a temporal matter, the question did extend the stop, and it also does not dispute that extending a stop beyond the time reasonably necessary to complete it violates Article I, section 9. See Rodgers/Kirkeby, 347 Or at 627-28 (explaining that the officers’ questions in both cases extended the stops because their questions occurred after the traffic stops had been completed, were unrelated to the stop, and were not independently justified).[1] The state argues, however, that the officer’s question about a weapon was reasonably related to the stop and, as a result, did not extend it. Specifically, relying *433 on State v. Watson, 353 Or 768, 305 P3d 94 (2013), the state reasons that questions that are reasonably related to a stop, by definition, do not extend the stop in violation of Article I, section 9. See id. at 779-80 (describing reasoning in State v. Fair, 353 Or 588, 614, 302 P3d 417 (2013)). Rather, questions that are reasonably related to a stop are part and parcel of the stop.[2] It follows that this case does not require the court to decide, and the majority does not decide, whether unrelated questions that occur during the course of a stop but that do not extend it — unrelated questions that, as the Court of Appeals puts it, occur during an “unavoidable lull” — are permissible under Article I, section 9. Rather, all that the majority decides is whether the officer’s question was “reasonably related” to the stop. And, because the question was not reasonably related, it extended the stop in violation of Article I, section 9. See Rodgers/Kirkeby, 347 Or at 627-28.
In considering whether the officer’s question was reasonably related to the stop, I agree with the majority that questions regarding weapons that occur during a stop are not always reasonably related to the stop. Most stops end without incident, and many stops do not provide a basis for asking about weapons. In saying that, I do not discount the risks that officers face in approaching a stopped car whose occupants are unknown or in stopping pedestrians who may, for all the officer knows, pose a risk of harm. After all, a stop is an exercise of coercive authority, and a person who is stopped may respond aggressively (and unexpectedly) for that reason alone. The risk increases when the stop occurs at night, in an isolated place, or in a high-crime area. However, to say, as the state does, that every stop poses a sufficient risk of injury to ask about weapons without regard to the circumstances is a proposition that is difficult to sustain.
I also agree with the majority that an officer’s safety concerns need not be sufficient to justify a search for weapons under State v. Bates, 304 Or 519, 524, 747 P2d 991 *434 (1987), before an officer can ask a question about weapons. A question is not a search. To require the same justification for both, as defendant would, fails to recognize the difference. The issue accordingly reduces to when the circumstances of a particular stop will pose a sufficient risk of harm to the officer or others present for the officer to conclude that asking about weapons is reasonably related to the stop. The answer to that issue will vary with the facts and circumstances of each case. Ordinarily, a traffic stop on a freeway in broad daylight will not provide a reason for an officer to inquire, as part of the stop, about weapons. However, a driver may make a furtive gesture, reach under the seat, or pull over slowly so that the driver or a passenger can secrete something. See State v. Morgan, 348 Or 283, 290, 230 P3d 928 (2010) (explaining that the officer reasonably seized and searched the passenger’s purse when she unexpectedly got out of the car, began acting nervous, and reached into her purse). Those circumstances can justify, at a minimum, a question regarding weapons when the officer explains what it was about the driver’s or passenger’s behavior that was concerning. See id.
In this case, the officer did not stop defendant while he was driving on the freeway. Rather, defendant was a pedestrian, and the stop occurred in a part of Portland— SE 122nd and Division — that the officer testified is “a high crime area [where] there has been — recently over the past, there’s been a lot of gang activity,” an assessment that defendant himself confirmed.[3] Additionally, defendant’s clothing was “indicative” of gang affiliation, although the officer could not say “for sure” that that was case.[4] Finally, the baggy clothes that defendant was wearing were the sort of clothes in which weapons could be “easily concealed,” and defendant had taken steps to avoid the officer when he pulled his patrol *435 car into a gas station next to the bus stop where defendant was sitting.[5]
In my view, those circumstances were sufficient to warrant asking defendant if he had a weapon and did not depend on impermissible stereotyping.[6] The majority does not hold otherwise. Rather, as I read its opinion, its holding rests on the absence of any explanation from the officer why the circumstances of this particular stop raised a safety concern and why the officer asked about weapons when he did. On that issue, the officer testified only that he asked defendant “if he had any weapons on him, which I do for all contacts on the street with pedestrians, just for — obviously officer-safety reasons.”
The officer’s testimony is lacking for two reasons. First, not only did the officer not explain why the circumstances of this stop concerned him, but he explained that he always asks about weapons in every pedestrian stop without regard to the circumstances of the stop. Second, the officer testified that he asked the question “obviously for officer-safety reasons.” “Officer safety” explains the nature of the officer’s concern. It does not identify the facts that, in his mind, gave rise to that concern.
As I read the majority’s opinion, it holds that, for a question regarding weapons to be reasonably related to a stop, an officer must explain why the facts or circumstances surrounding a stop caused the officer to have reasonable concerns for the officer’s or other persons’ safety.[7] I do not *436 disagree with that requirement, and I cannot say that, in light of the way that the parties argued this case before the trial court, the trial court’s implicit factual findings provide that link. On that basis, I concur in the majority’s opinion.
Linder and Landau, JJ., join in this concurring opinion.

 The Court of Appeals observed that Rodgers/Kirkeby is ambiguous as to when an unrelated question that occurs during a stop will extend the stop in violation of Article I, section 9. State v. Jimenez, 263 Or App 150, 154-55, 326 P3d 1222 (2014). As I read the opinion in Rodgers/Kirkeby, it holds unsurprisingly that a stop will continue as long as the officer exercises authority over the suspect to detain him or her. 347 Or at 628. It also holds that, if an officer asks a question during a stop that is unrelated to the stop and thus extends the stop beyond the time reasonably necessary to complete it, extending the stop violates Article I, section 9. Id. at 627-28.

 Of course, questions unrelated to a stop are permissible if the officer reasonably suspects that the suspect has committed another offense and asks about that offense. See Watson, 353 Or at 785. Additionally, if the encounter does not rise to the level of a stop, no justification is needed for an “unrelated” question. See State v. Ashbaugh, 349 Or 297, 308, 244 P3d 360 (2010) (no Article I, section 9, implications for “mere conversation”).

 When asked why he was carrying a gun, defendant replied that it “was for protection.” When asked why he needed protection, defendant said “something to the effect of the streets are very dangerous or the streets are crazy.” Those statements are relevant, not because the officer relied on them in assessing the danger that the area posed, but because defendant’s own statements confirmed the officer’s independent assessment of the danger.

 The officer explained that he knew that “gang members often will wear a gray baggy pant and the white shoes,” as defendant was, and he saw “what [he] thought was a green lanyard, [and he] knew that also to be indicative of some faction of the Bloods gang.”

 The officer testified that he saw defendant cross an intersection “on the Don’t Walk sign,” turned his car around, and approached a bus stop where defendant was sitting after having crossed the street illegally. The officer testified that, “[w]hen I pulled in [to the gas station next to the bus stop], he looked over at me, and immediately got up and began to walk away.”

 Some commentators have noted that the line between profiling and reasonable officer-safety concerns can be a fine one. See Caleb Mason, Jay-Z’s 99 Problems, Verse 2: A Close Reading with Fourth Amendment Guidance for Cops and Perps, 56 St Louis U L J 567, 577 (2012) (discussing officer’s question about weapons). In my view, the facts that the officer described in this case reasonably gave rise to legitimate concerns for officer safety. It may be that lesser facts also would be sufficient to justify a question concerning weapons, but this case provides no occasion to decide that issue.

 In Watson, the court explained that, as a statutory matter, a question must be reasonably related to the stop and reasonably necessary to carry it out. 353 Or at 777. If a question about weapons is reasonably related to a stop — if the facts give rise to a sufficient safety concern to ask about weapons — then it almost *436 automatically follows that the question also will be reasonably necessary to carrying out the stop.